**BAIRD WARD PRINTING COMPANY, INC., Plaintiff-Appellant,**

v.

**GREAT RECIPES PUBLISHING ASSOCIATES, and Jerang, Inc., Defendants,**

**Jerome Shapiro, Defendant-Appellee.**

No. 85–6033.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 26, 1986.

Decided Feb. 10, 1987.

Rehearing Denied April 14, 1987.

Steven A. Riley, argued, Delta Anne Davis, Bass, Berry & Sims, Nashville, Tenn., for plaintiff-appellant.

W. Harold Bigham, Nashville, Tenn., Barbara J. Moss, argued, for defendant-appellee.

Before: MARTIN, GUY and NORRIS, Circuit Judges.

NORRIS, Circuit Judge.

Plaintiff, Baird Ward Printing Company, Inc., appeals from the district court's holding that Jerome Shapiro is not personally obligated to pay the sums called for by the printing contracts which it seeks to enforce. Plaintiff brought a breach of contract action against Shapiro, Jerang, Inc., and a New Jersey limited partnership, Great Recipes Publishing Associates. The limited partnership and Jerang, Inc. subsequently filed for reorganization pursuant to Chapter 11 and the litigation is stayed as to them.

In order to publish a monthly recipe magazine, Shapiro, as general partner, along with twenty-five limited partners, formed the limited partnership, Great Recipes Publishing Associates. The partnership agreement provided the general partner with "exclusive power and authority" to manage the business of the partnership, and included a provision authorizing Shapiro to act as the attorney-in-fact for the limited partners in a number of areas, without their consent. The agreement also provided that Shapiro could not assign his interest unless his successor as general partner assumed his partnership obligations, maintained adequate net worth, and caused itself "to be substituted properly" for Shapiro.

Acting as general partner, Shapiro negotiated a June 28, 1982 contract with plaintiff to publish the October, 1982 edition of the magazine. Plaintiff was represented in the negotiations by Louis Berizzi, a salesman employed by Arcata Graphics, plaintiff's parent corporation. The October edition was printed and mailed at a cost of $166,652.82 to the partnership.

Concerned about his exposure to personal liability as general partner, Shapiro, on June 29, 1982, incorporated Jerang, Inc., a New Jersey corporation. Shapiro was the president and sole shareholder of Jerang. Initially capitalized with $53,000, Jerang's capitalization eventually was increased to in excess of $250,000.

An amendment to the limited partnership agreement dated July 2, 1982, substituted Jerang, Inc. for Shapiro as general partner. Shapiro signed the amended agreement as president of Jerang, as general partner, and as attorney-in-fact for each of the limited partners. He did not obtain written consent of the limited partners to execute the amended agreement.

Shapiro again negotiated with Berizzi for the printing of the November and December editions. Although he testified that he told Berizzi that he was entering this contract on behalf of Jerang, Inc., the substituted general partner of the limited partnership, Berizzi denied that he was told this. That contract and all subsequent contracts for the remaining printed issues were signed by Shapiro as president of Jerang, Inc., general partner. Shapiro also testified that he told Nat Oberman, assistant credit officer at Arcata, that he was signing as president of Jerang. Oberman in turn told Art Atkinson, the credit officer, about that discussion.

Following the printing of the November and December issues of the magazine, the limited partnership had accumulated a debt of approximately $700,000. Plaintiff initiated a meeting to discuss the debt and it was decided that payment would be possible only if the partnership continued to publish the magazine and expand its circulation. It was also decided that future payments would be credited to the oldest invoices first.[1] As further issues were printed, the partnership made payments, but the total debt continued to hover near $700,000. Because the payments from the partnership were sufficient to cover the cost of the October edition, the district court held that Shapiro's obligation on the contract for that edition had been satisfied.

At trial plaintiff contended that Shapiro was personally liable for the full amount of the debt owed by the partnership. Four theories were offered to support this contention: first, that the amended partnership agreement and substitution of general partner were ineffective because Shapiro did not properly withdraw and because Jerang, Inc. was not properly substituted; second, that Shapiro should be estopped from denying that he was liable for the debt of the partnership because he continued to represent himself as the general partner since he had not given notice of the substitution to Baird Ward; third, that Jerang, Inc.'s corporate veil should be pierced; and finally, that Shapiro was guilty of fraud. The parties agreed that under Tennessee's choice of law rules, New Jersey law controls the first three arguments, while Tennessee law is to be applied to the fraud argument.

The district court, sitting without a jury, found that plaintiff was on notice of the substitution of Jerang, Inc. for Shapiro as general partner of the limited partnership prior to contracting for the November and December, 1982 issues. As a consequence, the court ruled that the estoppel and fraud arguments failed for lack of an essential element, and that there was insufficient basis to pierce the corporate veil of Jerang, Inc. Finally, the trial court concluded that, by granting Shapiro their power of attorney, the limited partners had authorized him to amend the agreement, and had, in effect, given their written consent to the substitution.

Plaintiff renews its four-pronged argument, in this appeal.

Initially, we address the fraud and estoppel arguments as they turn on whether the district court erred in its factual finding that Baird Ward was sufficiently on notice of the general partner substitution prior to

---

1. Despite some evidence to the contrary, the district court made the finding of fact that this was one of the meeting's points of agreement and that conclusion is supported by sufficient evidence so as not to be clearly erroneous.

the contract for printing the November and December, 1982 issues. The appropriate standard for our review of such a finding is contained in Fed.R.Civ.P. 52(a), which provides: "Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

█ It appears that several events led the district court to find that plaintiff was on notice of the substitution. First, the court concluded that Berizzi, despite his denial, was advised by Shapiro that Jerang, Inc. was the substituted general partner of the partnership. This conclusion is buttressed by Shapiro having signed as president of Jerang when entering the contract for the November and December, 1982 issues and when signing security agreements. In addition, the district court noted that Shapiro told the assistant credit officer, who in turn told the credit officer, that Shapiro was signing as president of Jerang. Given our deferential standard for reviewing findings of fact, we are unable to say that the district court erred in finding that Baird Ward was on notice of the substitution prior to the contract for the November and December, 1982 issues.

█ Appellant next asserts that, even if fraudulent conduct is not present[2], Jerang, Inc.'s corporate veil must be pierced in order to serve the ends of justice or for any other reason which would justify piercing its veil. Under New Jersey law:

> Except in cases of fraud, injustice, or the like, courts will not pierce a corporate veil. The purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law. [Citations omitted.]

*New Jersey Department of Environmental Protection v. Ventron Corp.*, 94 N.J. 473, 500, 468 A.2d 150, 164 (1983). Appellant points to a claimed lack of formality in the conduct of Jerang, Inc.'s affairs and insufficient capitalization of the corporation as the basis for arguing that injustice will result if the corporate form is recognized to defeat a debt which was really Shapiro's.

Since a primary reason for use of the corporate form of doing business is to limit the liability of shareholders, plaintiff's argument, when applied to the facts of this case, would apply equally to defeat limitation of liability, in nearly every instance where businesses incorporate. Shapiro admittedly sought to limit his personal liability when he incorporated Jerang, Inc., substituted it for himself as general partner, and advised plaintiff of the substitution. He capitalized Jerang, Inc. with approximately $250,000. Accordingly, the corporation was not merely an undercapitalized shell formed to defraud creditors.

█ The more difficult contention is that Shapiro did not properly withdraw as general partner and substitute Jerang, Inc., and consequently is still liable, as a general partner, for the entire debt of the limited partnership. Plaintiff argues that Shapiro's attempted withdrawal and substitution of Jerang, Inc. violated both the limited partnership agreement and New Jersey's version of the Uniform Limited Partnership Act[3], and that it is in the position to raise the violations. We disagree.

---

**2.** We recognize that the argument that Shapiro defrauded Baird Ward is distinct from the argument that Jerang, Inc.'s corporate veil should be pierced because of its fraudulent purpose; however, the two are so closely related that the underlying conduct giving rise to each claim is the same. The district court having found that Baird Ward was on notice of the substitution of Jerang, Inc. for Shapiro defeats the fraud argument as well as the piercing of Jerang, Inc.'s corporate veil on the basis of fraud.

**3.** According to plaintiff, the substitution was invalid in the absence of the written consent of the limited partners, in view of N.J.Rev.Stat. § 42:2–13:

> 1. A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited

The trial court disposed of this argument by concluding that neither the agreement nor the statute was violated by the manner in which the withdrawal and substitution were accomplished. We need not test the validity of that conclusion, since we conclude that plaintiff was in no position to challenge the internal operation of the limited partnership, either by reliance upon the provisions of the agreement itself or the statute. Only parties privy to the partnership agreement are in a position to bring such a challenge, since the various rights and duties created by the agreement and the statute were intended to inure only to parties to the agreement.

The public policy underlying the statute's granting limited partners control over the substitution of a general partner is manifest. Since general partners control the conduct of business by a limited partnership, the requirement of written consent protects limited partners from having their investments fall prey to the management of unknown or undesirable persons. Under the circumstances of this case, then, substitution is essentially irrelevant. Plaintiff has no right to complain that there has been a defective substitution of a general partner, since it has not been prejudiced by failure to receive notice of that substitution. At the point of notice of substitution, plaintiff had the option to terminate further business dealings with the partnership. It is the lack of notice of substitution, not the substitution itself, which exposes a creditor to prejudice.

There are, of course, numerous situations where parties do not have standing to claim the benefit of protections designed for others. For example, creditors, as opposed to shareholders of a corporation, may not be able to attack a corporate transaction as *ultra vires*, unless its purpose was to divert corporate assets from their debts. *See* 7A W. Fletcher, Cyclopedia of the Law of Private Corporations, § 3452 (rev. perm. ed. 1978). An analogy also may be drawn to a situation often encountered when considering the doctrine of "negligence per se," where conduct is treated as negligent because it is in violation of a standard prescribed by statute. Where the statute is found to be intended for the protection of the interests of only a particular class of persons, a violation of the provision will be held to be negligence only toward persons who are included within the class. *See Restatement (Second) of Torts* §§ 286(a) comment f, 288(d) (1965). Again, one who is not privy to a contract ordinarily will not be able to maintain an action on it, unless the contract was made and intended for his benefit as a third party beneficiary. *Restatement (Second) of Contracts* § 302 (1979).

The formation of the limited partnership in this case was the product of a written agreement creating rights and duties among its signators. There is no indication in the partnership agreement of any intent to create rights in favor of third party creditors. Consequently, Baird Ward is in no position to complain that Shapiro failed to comply with his contractual obligations to his partners. Only parties to the agreement have standing to raise such complaints.

Thus, appellant has standing to challenge neither an alleged defect in the compliance with the statutory section governing the substitution of general partners nor alleged defects in compliance with the partnership agreement itself.

The judgment of the district court is AFFIRMED.

partners, a general partner or all the general partners have no authority to

* * * * * *

e. Admit a person as a general partner....